LYDIA J. DALE *vs.* HANOVER NATIONAL BANK & others.

Suffolk.    January 28, 1891. — December 16, 1891.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Insolvent Estate of Deceased Person — Widow's Allowance — " Necessaries."*

The purpose of a widow's allowance, under the Pub. Sts. c. 135, § 2, is merely to provide for her necessities and those of her minor children for a short time, until they have an opportunity to adjust themselves to their new situation. (ALLEN & MORTON, JJ. dissenting.)

The insolvent estate of a person deceased, intestate, whose widow had a private income of $1,200 a year, amounted to over $163,000, wholly personalty, of

which $15,000 was life insurance. They were of high social standing and accustomed apparently to a costly mode of living, and had had no children. At the time of his death they were not keeping house, but she was with her father, a man of property who charged her nothing for board and lodging, and they were intending to live with him. The Probate Court decreed her an allowance, under the Pub. Sts. c. 135, § 2, of $5,000. *Held*, on appeal, that $500 was as high an allowance as could properly be made, and that the amount allowed must be reduced to that sum. (ALLEN & MORTON, JJ. dissenting.)

APPEAL, by various creditors of the estate of Ebenezer Dale, from a decree of the Probate Court for Suffolk County giving his widow, on her petition, an allowance of $5,000 out of the personal estate of her husband. The case was heard by *Allen*, J., who affirmed the decree, and, upon an appeal being taken from his decision, reported the case for the consideration of the full court, upon agreed facts, in substance as follows.

Ebenezer Dale had lived with his wife in Boston, passing his summers with her at Gloucester. Both parties were of high social standing. Mr. Dale died on September 9, 1889, at the age of forty-six years, intestate and insolvent, leaving personal estate valued at over $163,000, including policies of insurance on his life worth $15,000, but no real estate. There were never any children by the marriage. Before Mr. Dale's death he and his wife had broken up housekeeping, and it was their intention in the autumn of 1889 to go and live with Mrs. Dale's father, who was eighty years of age and possessed of considerable property. At the time of her husband's death Mrs. Dale, who was about thirty-nine years of age, was actually staying at her father's house, and he charged her nothing for board and lodging. She had an income of $1,200 from her private property.

The petitioner produced at the hearing a statement from the assistant registrar of probate for Suffolk County, showing that in the last ten or twelve years there had been about one hundred and twenty-five probate cases in Suffolk County in which the widow's allowance had been fixed at $2,000 or over, the highest allowance found being $10,000.

The case was argued at the bar in January, 1891, and afterwards was submitted on the briefs to all the judges, except *Holmes*, J.

*M. Williams & C. A. Williams*, for the petitioner.

*J. C. Ropes & J. C. Gray*, for the creditors.

KNOWLTON, J.　The decision of this case involves two questions: first, what is the true construction of the statute in regard to allowances to widows by probate courts; secondly, what is the application of that statute to the facts agreed by the parties.　The language of the law relied on by the petitioner is as follows: "Such parts of the personal estate of a deceased person as the Probate Court, having regard to all the circumstances of the case, may allow as necessaries to his widow, for herself and for his family under her care, or, if there is no widow, to his minor children, not exceeding fifty dollars to any child, and also such provisions and other articles as are necessary for the reasonable sustenance of his family, and the use of his house and of the furniture therein for forty days after his death, shall not be taken as assets for the payment of debts, legacies, or charges of administration." Pub. Sts. c. 135, § 2.

By the revision of 1835, the previous statutes on this subject were materially changed, and put in a form very similar to the law now in force.　Rev. Sts. c. 65, §§ 4, 6.　The intention of the revisers is expressed in a note of the Commissioners, as follows: "This allowance for necessaries is not intended to compensate the widow for any apparent injustice to which she may in any case be exposed by the statute rules of distribution, or by the will of her husband; but merely to furnish her with a reasonable maintenance for a few weeks, and with some articles of necessary furniture, when she is not otherwise provided with them. This being the ground on which the allowance is made, it is evident that it ought to be made in all cases, and without regard to the claims of creditors or kindred; it being understood at the same time that it should always be of small amount, so as not to be sensibly felt by any others who are interested in the disposition and distribution of the estate." Report of Commissioners, Part II. c. 65, note.

The St. of 1838, c. 145, is in harmony with the Revised Statutes as interpreted by the Commissioners, and the language as thus amended, except for the addition of a clause providing an allowance for each minor child where there is no widow, is identical with that of the General Statutes and of the Public Statutes.

In *Adams* v. *Adams*, 10 Met. 170, Chief Justice Shaw cites,

with approval, the language above quoted from the Report of the Commissioners, and says: "On the whole, though there may have been some fluctuating views on the subject, we are of opinion, that this provision is intended for the present relief of the widow, for the maintenance of herself and children; that it is temporary in its nature and personal in its character, and confers no absolute or contingent right of property, which can survive her, or go to her personal representative . . . As a small, temporary personal allowance to a widow left in distress by the decease of her husband . . . till some arrangement can be made, it is an equitable provision." In *Drew* v. *Gordon*, 13 Allen, 120, this language is cited, and the doctrine of the former case is reaffirmed. In *Hollenbeck* v. *Pixley*, 3 Gray, 521, the court says: "In many cases, the widow, by the decease of her husband, may become the head of a household and family; new duties and obligations may rest upon her, causing an immediate demand for necessaries, sometimes even before letters of administration can be granted. The purpose of the statute, we think, is to make a personal allowance to her to meet these necessities. . . . It is a question solely of her actual necessities." The same interpretation is given to the statute in *Wright* v. *Wright*, 13 Allen, 207, 209, in *Allen* v. *Allen*, 117 Mass. 27, 28, in *Slack* v. *Slack*, 123 Mass. 443, and in *Paine* v. *Hollister*, 139 Mass. 144,—the allowance to the widow being spoken of in the last case as for "temporary relief to her immediate necessities upon her husband's death." As a result of a uniform line of authorities, the rule is established that the court has no right under the statute to attempt to modify the provisions of a will, or to change the course which property of an intestate takes under the statute of distributions, or to take the estate from creditors, to provide for the future of an unfortunate widow who is left dependent on her own resources. The purpose of an allowance is to provide for the necessities of the widow and minor children for a short time, until they have an opportunity to adjust themselves to their new situation. The intention of the Legislature appears in the provision that an allowance to a minor child, of whatever age, and however necessitous, can never exceed fifty dollars.

This being the true construction of the statute, it should be applied to the facts of each particular case, with a very careful

regard for the widow. But it should not be so applied as to pervert the law, or to produce an effect which it was not designed to have. From facts which appeared at the hearing, we have reason to believe that sympathy for widows left dependent either wholly or chiefly upon themselves for support has sometimes led to making allowances which were inconsistent with a correct construction of the statute, and a proper application of it to the facts of the case.

In the case at bar it appears that the estate of the deceased is insolvent; that the widow, at the time of her husband's death, had an income of $1,200 a year from her private property; that there were never any children by the marriage; that she and her husband were not then keeping house, but she was with her father, and was intending to live with him, and that he was a man of property, who charged her nothing for board and lodging.

On these facts, it is certain that the petitioner, after her husband's death, was not entitled to any considerable allowance to supply her immediate necessities. There is nothing in his estate that she can take under the statute of distributions, and it would be a wrong upon the creditors to take from them a part of the assets, if she were not in need of money to meet expenses immediately following his death, before she could readily adapt herself to her changed circumstances. It is not clear that she is entitled to anything. In some particulars the case is similar to *Hollenbeck* v. *Pixley, ubi supra,* in which an allowance to the widow was refused. But in view of the fact that the husband had in his possession personal property which was valued at over $163,000, although he owed a much larger sum, and that the parties were of high social standing, and apparently accustomed to a costly mode of living, we may infer that she had temporary pecuniary calls, which she could not conveniently meet, connected with her husband's death and her change from a wife entitled to support to a widow dependent on her own resources. Giving the petitioner the benefit of the most favorable inference to be drawn from the facts agreed, we are of opinion that $500 is as large an allowance as can properly be made, and the decree of the Probate Court must be modified so as to give her that sum.                            *Decree accordingly.*

MORTON, J. I am unable to agree with the opinion of the majority of the court. If the statute regarding allowances to widows had been enacted recently, and its construction were now before the court for the first time, it is possible this case might stand differently. But statutes relating to allowances have been upon the statute-books since 1783. The statute in its present form has been in force since 1838. These statutes have been applied repeatedly by this court in cases coming before it on appeal, beginning with *Brazer* v. *Dean*, 15 Mass. 183, decided in 1818. It is probably safe to say that scarcely a month has passed during all that time that some judge of probate has not been required to act on an application for a widow's allowance. In late years these applications have been much more frequent. In only a single instance, so far as the reported cases show, has this court reduced an allowance made by a probate court. That was the case of *Washburn* v. *Washburn*, 10 Pick. 374, which will be referred to again later. A construction has thus been given in practice by the Probate Court to the statute which has received the sanction of this court, and which has prevailed for many years. The views of the Commissioners on the revision in 1835, and the general expressions to be found in some of the decisions, are to be considered in the light of what this court actually has done. The allowances heretofore made, and the reasons for making them, and the circumstances under which they were made, must be looked at in order to determine whether the allowance in this case should or should not be affirmed. The point is not whether this allowance would be too large were the question wholly new, but whether it is too large in view of the construction that actually has been adopted and the practice that has been sanctioned by this court.

It is impossible to lay down any general rule by which the amount to be allowed to a widow may be determined with certainty in all cases. For that reason, no doubt, the Legislature has left the matter entirely to the sound and reasonable discretion of the court. The statute was designed to give to the Probate Court the power (which it had not without it) to assist out of the estate during its settlement a widow suddenly deprived of the aid of her husband, and placed by his death in a

distressing position, with new responsibilities, and with a family perhaps dependent on her care. *Hollenbeck* v. *Pixley*, 3 Gray, 521. With this purpose in view, the statute has always been construed liberally in favor of the widow. The Sts. of 1783, c. 36, § 3, of 1802, c. 93, and of 1816, c. 95, provided that, in making an allowance to the widow, regard should be had to "her quality and degree," which was only another way of saying, as the St. of 1805, c. 90, § 2, said, "according to the degree and estate of her husband." These words were omitted from the Rev. Sts. (see c. 65, §§ 4, 5, 6), and were not in the statute of 1838 (see c. 145), which was afterwards re-enacted in the Gen. Sts. c. 96, § 5, and repeated in the Pub. Sts. c. 135, § 2; but it has been considered that the matters to which they refer were embraced in the broader phrase, "all the circumstances of the case," which was introduced first into the statute of 1838. In *Hollenbeck* v. *Pixley*, *ubi supra*, Shaw, C. J. speaks of the statute of 1838 as substantially reinstating the law as it stood before the Revised Statutes, and as making no substantial change from the earlier statutes. Accordingly, the social position of the husband at the time of his death, and the demands which it would naturally entail upon his widow, the style in which she had been accustomed to live, the amount of his estate, and whether real or personal, or both, and whether she would receive anything from it besides her allowance, her age and state of health, the amount of her own property, and the number of her family, with many other like considerations, have all been taken into account in fixing the amount to be allowed to her. *Brazer* v. *Dean*, 15 Mass. 183. *Washburn* v. *Washburn*, 10 Pick. 374. *Crane* v. *Crane*, 17 Pick. 422. *Hale* v. *Hale*, 1 Gray, 518. *Hollenbeck* v. *Pixley*, 3 Gray, 521. *Kingsbury* v. *Wilmarth*, 2 Allen, 310. *Allen* v. *Allen*, 117 Mass. 27. *Slack* v. *Slack*, 123 Mass. 443. *Bush* v. *Clark*, 127 Mass. 111. *Gilman* v. *Gilman*, 53 Maine, 184. *Walker, appellant*, 83 Maine, 1. *Kingman* v. *Kingman*, 31 N. H. 181. *Sawyer* v. *Sawyer*, 28 Vt. 245. *Meech* v. *Weston*, 33 Vt. 561.

The widow's claim upon her husband's estate has been regarded as higher than any other claim against it, except perhaps taxes. It has taken precedence of debts and legacies, and of the expenses of the last sickness and funeral and of the settlement

of the estate. The widow has been held to be entitled to it, though the result was to compel the sale of real estate to meet these claims. She has received it when the estate was insolvent. In an early statute, indeed, she was given an allowance only in case of the insolvency of her husband's estate, probably on the ground that she would receive no distributive share. *Kingsbury* v. *Wilmarth*, 2 Allen, 310. *Bush* v. *Clark*, 127 Mass. 111. *Williams* v. *Williams*, 5 Gray, 24. St. 1783, c. 36, § 3. See also St. 1802, c. 93. Notwithstanding the allowance has been spoken of in illustration as "a temporary relief to her immediate necessities on her husband's death," it has been held in one case that she was entitled to it when it appeared that at the time of her husband's death she had been living apart from him for many years, and had supported herself, and had no child, and in another case that she was entitled to an allowance made to her two years after her husband's death, the administrator having advanced to her in the mean time on account of her distributive share all the money that she desired. *Allen* v. *Allen*, 117 Mass. 27. *Slack* v. *Slack*, 123 Mass. 443.* In no case has the allowance been limited to her actual necessities, meaning by that food, clothing, shelter, and the comforts and attendance which her physical condition may have required, nor confined to her temporary necessities, using these words in their ordinary sense. The word "necessaries" has been construed in practice to include these and much more. Her actual necessities have been measured by her husband's wealth, his social position and her own, the demands which these would entail upon her, her age, health, habits, mode of life, and other like matters. The interests of heirs and creditors have never been suffered to interfere with her claim.

In only two reported cases has this court, following the Probate Court, denied an allowance. The first was *Currier, appellant,* 3 Pick. 375, where the allowance was refused because the husband had died testate and solvent, the widow being entitled to an allowance, as the law then stood, only in cases of intestacy and insolvency. The other was *Hollenbeck* v. *Pixley, ubi supra,* which this case does not resemble.

---

* See *Lisk* v. *Lisk, post,* 153.

In all other reported cases, except *Washburn* v. *Washburn, ubi supra,* the decree of the Probate Court has been affirmed under circumstances that confirm the views presented above. In *Brazer* v. *Dean, ubi supra,* the estate was insolvent, and the widow was given the whole of the personal property, amounting to $146. In *Washburn* v. *Washburn, ubi supra,* there was personalty of $6,000, realty valued at $4,000, and debts amounting to about $4,000. There was no child. The Probate Court allowed the widow $3,000, which this court reduced to $1,000, observing that she would have her distributive share and dower. In the present case, the widow will get neither distributive share nor dower. *Washburn* v. *Washburn* is cited in *Allen* v. *Allen, ubi supra,* to sustain the amount there allowed. In *Adams* v. *Adams,* 10 Met. 170, one of the cases much relied on as supporting a conclusion adverse to that here reached, the widow was allowed $500 after her dower had been assigned. The amount of the personal estate appears from the papers to have been about $2,500. The case went off on another point, but there seems to have been no objection to the amount allowed. In *Hale* v. *Hale, ubi supra,* there were two allowances of $300, each out of personalty amounting to $1,925.66; the realty amounting to $9,050, in which presumably the widow had dower. In *Kingsbury* v. *Wilmarth, ubi supra,* the personal property was $406.94, and the allowance was $250. In *Whiting* v. *Whiting,* cited by the counsel for the petitioner in *Hale* v. *Hale, ubi supra,* the full court sustained an allowance of $1,200 out of an estate of $22,500. In *Crane* v. *Crane, ubi supra,* it is said, in the brief of the counsel for the petitioner in the case at bar, that the personal estate was shown by the inventory to be $2,687.38, and the realty $7,612, in which the widow had dower. The allowance was $895. In *Drew* v. *Gordon,* 13 Allen, 120, the amount of the real estate was $2,650; there was also personal property amounting to $142.87, and gas stock appraised at $250, but of little market value. The widow was allowed $250. In *Allen* v. *Allen, ubi supra,* the personal estate after the payment of debts was $9,000, and the widow had dower in the real estate valued at $14,500; the allowance was $800, and was made two years after the husband's death. It appeared that shortly after his death the widow had broken up housekeeping and had boarded, and the administrator

had supplied her with all the money she desired, charging it to her distributive share. In *Slack* v. *Slack, ubi supra*, the allowance was $350, and it is stated in the report in the case that the administratrix contended that this took all the personal estate and more. In *Bush* v. *Clark, ubi supra*, there were two allowances, the first of $173, which took the whole of what may be called the husband's private personal estate, and the second of $1,512.16, out of personal property belonging to him as a surviving partner of an insolvent firm.

In Maine, where the statute authorizes an allowance to the widow " according to the degree. and estate of her husband and the state of the family under her care," in a case where the husband's estate amounted to between five and six hundred thousand dollars, mostly personal, the Probate Court allowed the widow $75,000, which the Supreme Court, on hearing, increased to $85,000. *Gilman* v. *Gilman*, 53 Maine, 184. In another case in Maine the husband's estate consisted of personal, $7,250, rights and credits, $3,250 more, and real estate, $4,750. The debts were $3,500. The widow had $10,000 in personal property, received from her father's estate. The Probate Court allowed her $2,000. The Supreme Court reduced this to $1,500, but on condition that a gift of $2,000 by her husband to her should remain undisturbed. *Walker, appellant*, 83 Maine, 1.

The statute of New Hampshire allowed the judge of probate to make to the widow " a reasonable allowance out of the personal estate for her present support." Comp. Sts. of N. H., c. 175, § 1. In the leading case of *Kingman* v. *Kingman*, 31 N. H. 181, the personal estate was $14,699.75, and the real $10,420. Dower was assigned to the widow of a rental value of $366 per annum. The widow then petitioned for an allowance. The Probate Court gave her $1,250. The Supreme Court, on appeal, thought this too much, but gave her $750.

In Vermont, a statute provided that the widow and children constituting the family of the deceased should have such reasonable allowance out of the personal estate as the Probate Court should judge necessary for their maintenance during the progress of the settlement of the estate according to their circumstances. Comp. Sts. of Vt., c. 48, § 29. In *Sawyer* v. *Sawyer*, 28 Vt. 245, the estate of the husband was $18,000 to $20,000, of which

$2,000 was real.  The widow, upon her husband's death, became entitled to a pension of $240 a year.  After his death she lived with her father, who was wealthy, without any arrangement as to paying her board till she filed a petition for an allowance, when she told him she expected to pay board.  There was no child.  The court allowed her $500.  The social position of the widow and her father, which was high, was taken into account.  In *Meech* v. *Weston*, 33 Vt. 561, the widow was allowed from time to time various sums, amounting in all to $2,200.  The amount of the estate and her own situation do not appear in the reported case.

The Supreme Court of Connecticut has given a narrower construction to a similar statute existing in that State, and one which tends to support the view taken by the majority in the present case.  *Leavenworth* v. *Marshall*, 19 Conn. 408.  The statute of Rhode Island is somewhat different from the other statutes referred to, and does not appear to have been construed by the Supreme Court of that State.  Pub. Sts. of R. I., c. 185, § 4, c. 186, § 11.

I have not thought it worth while to pursue this investigation beyond the States named.  I think the result of this examination is to show plainly that the decision by the majority of the court in the present case is not sustained by the practical construction which has been sanctioned by this court, or by the practical construction generally adopted in other New England States where similar statutes exist.

Mr. Dale's estate amounts to over $163,000.  It is all personal, and is insolvent.  The widow, as already observed, will get neither dower nor distributive share.  The history of the legislation on the subject shows that insolvency, instead of weakening her claim to an allowance, strengthens it if anything.  The cases which have been cited also tend in that direction rather than the opposite.  The position of Mr. and Mrs. Dale was that of high social standing.  There is nothing in the facts to indicate their style of living except what may be inferred from that fact and from the apparent wealth of Mr. Dale.  Nothing appears concerning the state of Mrs. Dale's health, and her income without extravagance on her part may fall far short of providing for expenditures which her situation and mode of life

require. It is obviously no answer to her claim to say that her father is aged and wealthy, nor to say that her husband and herself had broken up housekeeping before his death and were going to live with her father in the fall, and that she was living with him when her husband died, and that he charged her nothing for her board and lodging. In *Allen* v. *Allen, ubi supra*, no importance was attached to the fact that the widow had broken up housekeeping, and no case in this State suggests that, if a father or relative or friend is willing to support the widow, her allowance is to be cut down by the amount of support which she thus receives. She may prefer to pay, if she is able, and the law does not oblige or encourage her to become a pensioner on another person's bounty in order to benefit her husband's estate. Besides, it does not appear what other claims there are, if any, on Mrs. Dale's father, or that he will not accept payment if she is able to pay him.

The amount allowed in the present case, although a large one, is not an unusual one, as is shown by a list of allowances for the last ten years made by the Probate Court in this county. The fact that these apparently have been acquiesced in tends also to support what has been said above as to the construction that has been given to the statute in practice.

It is also a circumstance, not perhaps without weight, that $15,000 of insurance on her husband's life, which ordinarily would be expected to come to his widow or family, has gone into and helped swell his estate for the benefit of his creditors.

I think that the decree of the Probate Court should be affirmed, and I am authorized to state that Mr. Justice Allen concurs in the views expressed above, and the result arrived at.