[No. 7048. Decided December 20, 1907.]

THE STATE OF WASHINGTON, on the Relation of Harriet F. Speckart, Appellant, v. THE SUPERIOR COURT FOR THURSTON COUNTY, Respondent.[1]

CERTIORARI—ADEQUACY OF REMEDY BY APPEAL. There is no adequate remedy by appeal, and certiorari lies, where an administrator with the will annexed has been authorized to pay out $500 per month to the widow of the deceased, and during six months has paid out over $3,500 in costs of administration and other larger sums for other purposes.

EXECUTORS AND ADMINISTRATORS — ADMINISTRATION — NECESSITY. There is no justification for administration with the will annexed, in this state, thirteen years after the death of the testator, where he died in a sister state, and the widow was appointed executrix in that state, notice to creditors was duly given there, her accounts approved, and nothing remained to be done there except to distribute the estate according to the law of that state vesting the same in the devisees.

SAME—ALLOWANCE TO WIDOW. An allowance to a widow for support pending administration cannot be granted thirteen years after the death of the testator, after ample allowances in another state under proceedings which were not closed up by final distribution owing to the neglect of the widow.

Certiorari to review an order of the superior court for Thurston county, Linn, J., entered September 25, 1907, after a hearing on the merits, denying a petition to dismiss proceedings had in the probate of a will. Order reversed and proceedings dismissed.

*E. E. Heckbert, C. M. Idleman,* and *J. W. Robinson,* for relator.

*G. C. Israel* and *Frank C. Owings,* for respondent.

RUDKIN, J.—Adolph Speckart, a resident of Silver Bow county, Montana, died testate in that county on the 15th day

[1]Reported in 92 Pac. 942.

of February, 1893.  His will was admitted to probate in the District Court of the Second Judicial District of Montana on the 6th day of March, 1893, and his widow, Henriette Speckart, was appointed executrix thereof, without bonds, as provided therein.  All the property of the testator of whatsoever kind and wheresoever situate was devised and bequeathed to his widow and two children, share and share alike, and under the terms of the will the children became entitled to their respective shares as soon as they attained the age of majority under the Montana statute.  The executrix duly qualified and entered upon the discharge of her duties.  Notice to creditors was published, and under dates of June 1st, 1895, and June 6th, 1896, she filed annual reports, setting forth her receipts and disbursements on account of the estate, and showing that all debts against the estate had been paid in full.  The accounts so rendered were settled, allowed and approved by the court.  Other proceedings were had in the Montana court, but we deem it unnecessary to set them forth in this opinion.  All the personal property belonging to the estate and a considerable portion of the realty were converted into money as early as 1899, under the direction and supervision of the Montana court.  On the 24th day of July, 1890, a citation issued requiring the executrix to file an account on or before September 1st of that year, but the executrix having left the state no further proceedings were had.

On the 16th day of June, 1906, the resignation of the executrix was accepted by the Montana court, and Andrew J. Davis was appointed administrator with the will annexed, in her place and stead.  In the summer of 1896, the executrix left the state of Montana, accompanied by her two children, and took up her residence in Germany.  The funds belonging to the estate she took with her and deposited in German banks at interest in her own name.  In the year 1901 she removed from Germany to San Diego, California, and continued to reside at the latter place until 1906.

On the 26th day of May, 1906, Josey R. Speckart, son of the testator, and one of the devisees named in the will, petitioned the superior court of Thurston county for the probate of the will here, and asked that Leopold F. Schmidt be appointed administrator with the will annexed. After notice and a hearing the prayer of the petition was granted, and on the 18th day of June, 1906, Schmidt was appointed administrator, but through inadvertence the order admitting the will to probate was not entered until a later day. The administrator thus appointed duly qualified and filed an inventory of the estate. On the 15th day of October, 1906, an order was entered allowing the widow of the deceased the sum of $500 per month for maintenance, beginning with the 19th day of June, 1906, and continuing from month to month thereafter. On the 10th day of January, 1907, the administrator filed his semi-annual account, and on June 24, 1907, his final account. On the 19th day of June, 1907, the relator, Harriet F. Speckart, daughter of the deceased, and one of the devisees named in the will, appeared specially in the estate matter, objected to the jurisdiction of the Thurston county superior court, and prayed that all orders and decrees made therein be reversed and annulled. The grounds of this petition will sufficiently appear in the course of the opinion. A hearing was thereafter had and on the 25th day of September, 1907, the prayer of petition was denied. An order to show cause why a writ of review should not issue was thereupon granted by this court, and the entire record is now before us on the return to the show cause order.

The first question for consideration relates to the remedy, the respondent contending that the relator has an adequate remedy by appeal, and that a writ of review or certiorari will not lie. If the court below has erroneously entertained jurisdiction of this administration proceeding, we do not think that the remedy by appeal is adequate. It appears from the return that the administrator has been authorized to pay an al-

lowance of $500 per month to the widow of the deceased, and during the first six months of his administration has paid out upwards of $3,500 in costs of administration. The schedules attached to the final account of the administrator have not been made a part of the return, so that we do not know what amount has been paid out in costs and disbursements during the period covered thereby, or how much may be disbursed in the future. It does appear, however, that about $8,000 has been paid out and disbursed for one purpose or another, in addition to the $3,500 above mentioned. An appeal from the orders directing or approving these several allowances or disbursements, if the orders are appealable at all, or an appeal from the order settling the final account or decreeing a distribution of the estate would not, in our opinion, be an adequate remedy. *In re Sullivan's Estate*, 36 Wash. 217, 78 Pac. 945.

On the merits, the relator contends that the court below was without jurisdiction, because the testator lived and died without the state and left no estate therein; because the estate sought to be administered upon was brought within the state more than thirteen years after the testator's death and had already vested in the devisees named in the will, and the administration was therefore sought upon the estate of the living rather than the dead, and for various other reasons we deem it unnecessary to discuss or set forth. The respondent, on the other hand, contends that the court had jurisdiction both under the statute and independent of the statute.

We do not deem it necessary to discuss the jurisdictional question, because the whole case is now before us for review, and we are convinced that no excuse, necessity, or justification for the administration has been shown. In fact the contrary clearly appears. All letters of administration are for purposes more or less temporary. The primary object is the collection of the assets and the payment of the debts of the decedent. The distribution of the residue among those thereto

by law entitled is only an incident, and when the primary ob-
ject of administration is nonexistent, when all debts against
the estate have been paid or barred, when the estate has be-
come vested in those entitled thereto by law, and especially
when thirteen years has been allowed to elapse after the death
of the testator, no court should assume jurisdiction of the
estate for the sole and only purpose of making a distribution
thereof among those in whom the estate has already vested.
This court has, in effect, so decided in many cases, and our de-
cisions are in entire harmony with adjudications from other
states. *Griffin v. Warburton*, 23 Wash. 231, 62 Pac. 765; *Mur-
phy v. Murphy*, 42 Wash. 142, 84 Pac. 646, and cases there
cited; *Wright v. Smith*, 19 Nev. 143, 7 Pac. 365; *Fisk v.
Norvel*, 9 Tex. 13; *Granger v. Harriman*, 89 Minn. 303, 94
N. W. 869; *Flood v. Pilgrim*, 32 Wis. 376.

A cursory examination of the record will show the injustice
of this proceeding. After having received an allowance of
$5,700 through the Montana court, the widow is here allowed
$500 per month, thirteen years after her husband's death, and
this too, when the failure to close the estate years ago was due
solely to her own neglect. No such allowance is contemplated
or authorized by law. *Dale v. Hanover Nat. Bank*, 155 Mass.
141, 29 N. E. 371; *Jespersen v. Mech*, 213 Ill. 488, 72 N. E.
1114; *In re Dougherty's Estate*, 34 Mont. 336, 86 Pac. 38.

In the latter case the supreme court of Montana said:

"But it is urged that it appears that the widow has pur-
posely delayed the settlement of the estate in order that she
might consume the whole of it by means of her allowance.
This contention presents the question: How long may the al-
lowance continue? May it continue indefinitely? If the
estate is insolvent, it continues for one year. Code Civ. Proc.,
§ 2582. If it is not insolvent, the allowance is made to con-
tinue 'during the progress of the settlement of the estate.'
Id. The policy of the law is that the affairs of estates shall
be settled and the assets distributed as speedily as possible.
The expression 'during the progress of the settlement of the ·

estate,' then, must be construed to mean, during the time reasonably necessary for that purpose. If. so, the order, though regarded as a judgment, fixing a lien upon the assets of the estate must be presumed to have been satisfied when the time shall have arrived at which the estate may be settled; else the administrator may delay action until the whole estate is consumed and nothing be left to those who are entitled to a distributive share in its assets."

If the final account of the administrator should be approved as rendered, the cost of administration will approximate $20,-000. By reason of its pendency the relator is deprived of the use and enjoyment of her portion of the estate for an indefinite period, and is compelled to contribute $6,000 or $7,000 towards the expenses of what is at best an idle ceremony. Against such a proceeding under the forms of law, we think she has ample grounds to complain.

The record is now before us, and the issuance of a writ of review to bring it up is not required. For the reasons herein stated the order of the court below is reversed, and the cause is remanded with directions to dismiss the proceeding as prayed.

HADLEY, C. J., MOUNT, DUNBAR, CROW, FULLERTON, and ROOT, JJ., concur.