[No. 26459. Department Two. April 1, 1937.]

*In the Matter of the Estate of* SILAS B. MASON, *Deceased.*

HOWARD VIEH, *as Administrator, et al., Respondents,* v. SUSANNE B. MASON, *Appellant.*[1]

[1]Reported in 66 P. (2d) 310.

*Graves, Kizer & Graves,* for appellant.

*William H. Pemberton, Charles Snyder, Funk-house & Twohy,* and *H. A. Davis,* for respondents.

TOLMAN, J.—This is an appeal from an order appointing an administrator. The matter was bitterly contested through many hearings. Some evidence was taken, the statement of facts containing some eighty pages, consisting mostly of argument by counsel interspersed with admissions by them of various facts which have, or are supposed to have, a bearing upon the controversy.

Because of the fragmentary way in which the facts appear in the record (although we have carefully read and considered the whole of it), and because we consider much of what was presented below to be now immaterial, we will, at the risk of possible minor inaccuracies, attempt to give a rather offhand statement of the facts based upon the general impression which the reading of the record has created.

Silas Mason died at Mason City, in Okanogan county, on April 14, 1936, intestate. He was supposed to be a man of very great wealth. No one applied for letters of administration in this state during the statutory forty days following his death. In June,

1936, one George F. Vanderveer, at the solicitation of the head of the inheritance tax and escheat division of the state, filed a petition for his own appointment as administrator, alleging that Mason died a resident of this state.

Three or four days later, one H. W. Schildknecht filed his petition in the same court, asking that letters of administration be granted to him. That petition alleged that Mason, at the time of his death, was a resident of and domiciled in the state of Kentucky, but it also set forth that the decedent left personal property in the state of Washington of the value of $250. This petition shows that it was presented at the request of the heirs; and the proof clearly indicates that not only the heirs, but the personal representatives of the decedent, appointed to administer his estate in Kentucky, also requested this appointment.

The two petitions were heard together, and immediately it developed, and is shown upon every line of the record, that the inheritance tax division of the state has conceived the idea that the decedent was a resident of the state of Washington at the time of his death; that, therefore, his intangible assets, which are vast in amount and value, are a part of his estate to be administered here; and that such estate, including such intangible assets, is subject to our state inheritance tax. Upon the contrary, the appellant, Susanne B. Mason, the widow of the deceased, has from the beginning contended that, at the time of his death, Mason was domiciled in and a resident of the state of Kentucky, where probate proceedings have been commenced; that no assets of his are subject to administration in the state of Washington, save only the $250 worth of personal property at Mason City, which has already been referred to;

and that such property, if administration be necessary, should be administered in probate proceedings ancillary to those pending in Kentucky, although she also contends that no administration whatever is necessary in the state of Washington.

It will thus be seen that there is a vital controversy between the state of Washington and those interested in the estate of the deceased as to whether the deceased was a resident of this state or of the state of Kentucky at the time of his death. By no stretch of imagination can that issue be considered to be before us now. We state it only as showing the background, and to evidence that it must be borne in mind that there will be raised hereafter, in some way, a sharp issue as to the domicile of the deceased, and that the administrator will be more or less a passive party to the litigation upon that subject.

It does clearly appear from the evidence that, within forty days after the death of Mason, at the instigation of the widow, the appellant here, probate proceedings were commenced in the state of Kentucky; that the widow there waived her statutory right to administer, and at her request two brothers of the deceased were, by the Kentucky court, appointed to administer the estate.

The appellant first assigns as error the overruling of her motion to dismiss both the petition of George F. Vanderveer and the petition of H. W. Schildknecht at or near the close of the taking of testimony. The motion was based upon the supposed established facts that no property of any moment existed in this state; that the deceased owed no debts to any citizen or resident of this state; and that administration would be useless and would impose a needless burden of expense.

There is one very important reason why the motion

to dismiss, so based, might not be granted, and that is that statements by counsel or admissions in open court could not and would not bind any creditor of Silas B. Mason, deceased; and, his death having occurred only in April, 1936, the statute of limitations has not yet run against any class of claims. Notwithstanding anything counsel may have asserted or admitted, any one hereafter claiming to be a creditor would be wholly unhampered thereby. There may be other reasons, but this alone is sufficient.

One of the principal reasons for the administration of an estate is to give notice to creditors, and at the proper time procure a decree binding upon all the world to the effect that there are no creditors, or, if there be creditors, that they have all been paid.

*State ex rel. Speckart v. Superior Court,* 48 Wash. 141, 92 Pac. 942, cited by the appellant, bases the doctrine of nonadministration squarely upon the fact that all debts of decedent have either been paid or are barred by the statute of limitations. *Murphy v. Murphy,* 42 Wash. 142, 84 Pac. 646, recognizes the same rule, and, so far as our search has gone, we find no case in this court which in any wise reflects upon that rule.

█ The second assignment of error is based upon the refusal of the trial court to grant a continuance. The matter of a continuance is always peculiarly within the discretion of the trial court, and from the record before us, we can find no evidence of an abuse of discretion.

█ The third error assigned is based upon the refusal of the trial court to sustain appellant's objection to a hearing on the petition of George F. Vanderveer. This need not be considered, because the Schildknecht petition was before the court and was sufficient to give the court jurisdiction to proceed to

the appointment of an administrator, and whether the Vanderveer petition was stricken or not is now beside the question.

■ The fourth assignment of error is based upon the refusal of the trial court to strike the testimony of William H. Pemberton from the record. It is true that much of this so-called testimony was argumentative and many of his statements were conclusions of law, but whether this testimony be in or out of the record, it cannot affect the power and right of the court to appoint an administrator.

■ The next and final assignment of error is that the court erred in its refusal to appoint H. W. Schildknecht as administrator. Under this head, the appellant seems to urge that she, as the widow, having within forty days after the death of the decedent applied to the probate court in Kentucky, has thereby complied with our statute which limits the widow's preference right to apply for letters to a forty day period. Our reading of the statute does not impress us with the idea that it has reference to anything that may be done elsewhere. The wording of the statute is not ambiguous and it reads:

"(4) If the persons so entitled shall fail for more than forty days after the death of the intestate to present a petition for letters of administration, . . . then the court may appoint any suitable person . . . " Rem. Rev. Stat., § 1431 [P. C. § 9947].

It follows from the plain language of the statute that, in this case, the court was authorized to appoint "any suitable person."

■ But it is urged that, even if the widow had lost her statutory right of nomination, still the court, in the exercise of sound discretion, should have selected her nominee.

Very likely, in most cases that should be done. Where there is nothing in view but the performance of the ordinary duties of administration, we might even go so far, in an aggravated case, as to say that there was an abuse of discretion in preferring a person who was committed to interests adverse to the widow and adverse to her interest in the estate, but that is not this case.

The one question in dispute is the question of domicile. The petitioner Vanderveer was denied consideration because it was evident that he had become a partisan upon that question. The petitioner Schildknecht in his petition, verified by his oath, alleged that the deceased was domiciled in Kentucky. He therefore was also a partisan. While it is not to be presumed that either petitioner, if appointed, would have so far disregarded his sworn duty as to suppress evidence or to attempt to prevent a fair trial upon the question of domicile, yet a will to help either party might throw an unfair burden upon the other.

The trial court felt that a wholly unbiased and fairminded administrator would insure fairness and justice to those interested on either side of the controversy, and acted accordingly.

There was no abuse of discretion, and the judgment appealed from is affirmed.

STEINERT, C. J., BEALS, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—This decision is indefensible. It ignores and annuls our statute and disregards, without reference or discussion, our own cases which are and should be controlling.

Rem. Rev. Stat., § 1431 [P. C. § 9947], in so far as material to this case, reads:

"Administration of the estate of a person dying intestate shall be granted to some one or more of the persons hereinafter mentioned, and they shall be respectively entitled in the following order:

"(1) The surviving husband or wife, or such person as he or she may request to have appointed.

"(2) The next of kin in the following order:

. . .

"(3) One or more of the principal creditors.

"(4) [As quoted by the author of the opinion herein.]"

It is a manifest abuse of discretion to ignore the first subdivision of that statute.

In *Larson v. Stewart*, 69 Wash. 223, 124 Pac. 382, Ann. Cas. 1914A, 1011, Chadwick, J., correctly stated:

"It was the policy of the courts from the beginning to give the administration of estates over to those having an interest therein, the right originally being in the state or in the king. Statutes have not changed the rule in this respect, excepting in so far as they establish the order of preference. The reason for the rule remains; that is, that if possible the administration of an estate should be put in the hands of those who have the greatest interest therein. On the other hand, the right of a creditor to administer was not recognized in the beginning, and although finally admitted at common law, it has, we believe, come to be regulated wholly by statute in this country. . . .

"While holding that a surviving husband or wife, or the next of kin in the order named, has a 'right' in the strict sense, one founded upon natural justice and equity, we are of opinion that the creditor has no more than a privilege to pray for and receive letters, if the others do not exercise their preference. . . . But it is generally held that, where there is a right of nomination, the court will give heed to the wishes of the interested parties, and upon a showing of competency, will exercise its discretion in favor of the nominee of the moving parties. Our statute does not, by its express terms, give a right of nomination to any of the enumerated classes, *save the sur-*

*viving husband or wife. They may request that another be appointed."* (Italics mine.)

In *State ex rel. Cowley v. Superior Court,* 158 Wash. 546, 291 Pac. 481, 70 A. L. R. 1460, Fullerton, J., said:

"It has never been the policy of the law to give the administration of estates to those who have no interest therein, and the statute has not changed the rule in this respect. *Larson v. Stewart,* 69 Wash. 223, 124 Pac. 382, Ann. Cas. 1914A 1011. The reason is that strangers to an estate, who have no other interest in the selection of an administrator than the fees and emoluments that go with the office, do not have the same incentive to preserve the estate and cause it to pass to those beneficially interested without waste or loss or delay, as does one having such an interest.

"In this instance, it is true that the person selected by the court as administrator is without beneficial interest in the estate. *But he was the choice of those who were beneficially interested,* and their wishes are entitled to weight. Moreover, the person selected was in actual charge of the decedent's property at the time of her death, and had been in such charge for a number of years prior thereto. He is the one person of all others who has an intimate knowledge of the property and its value, and manifestly he is better qualified to administer upon it than can be an absolute stranger thereto." (Italics mine.)

That is true here. The petition of H. W. Schildknecht, which must be assumed to be true, alleged, as stated by the majority, that Mason, at the time of his death, was a resident of and domiciled in Kentucky and also set forth that decedent left personal property in this state of the value of $250. The petition also stated that it was presented at the request of the heirs, and the proof clearly indicates that not only the heirs, but the personal representatives of decedent, appointed to administer the estate in Kentucky, also requested this appointment.

That petition also showed that he is the manager of the only bank located in Mason City and was familiar with all of the problems confronting the contractors in their work.

It is incomprehensible how the controlling portion of our own statute and our cases should be thus wholly disregarded. The order should be reversed.

For this reason, I dissent.

