108        NEW-YORK PRACTICE REPORTS.

Hamilton agt. The Accessory Transit Company and others.

## SUPREME COURT.

### Jeremiah G. Hamilton agt. The Accessory Transit Company and others.

*It seems*, that this court should hesitate in acknowledging the validity of the decree dissolving The Accessory Transit Company on the 18th of February, 1856, by Rivas, the provisional president of the republic of Nicaragua, as not being in conformity with the previously existing established organic laws of the land—not having even the color of legality, or the sanction of any legislative body, or judicial tribunal. But an act of purely arbitrary power, emanating from the absolute will of the individual Patricio Rivas.

But admitting an apparent dissolution of this company, however probable as a historical fact, yet if no material injury is likely to befal the property before the ultimate decision of the cause, the court, in the exercise of a sound discretion, ought not to interfere by granting an injunction and appointing a receiver, especially where the application is made on behalf of one stockholder, in opposition to the others.

*New-York Special Term, Oct., 1856.*

Jeremiah Larocque, *for motion.*
Horace F. Clark, *opposed.*

Clerke, Justice. I do not acquiesce in the opinion, expressed by the counsel of the plaintiff, that if the company has, for any cause, been dissolved by any authority exercising supreme power in Nicaragua, this application must necessarily be granted.

This is an application for an injunction until the trial, and for the appointment of a receiver. These are provisional remedies, in the sound discretion of the court, and should never be granted, unless, at least, there is the strongest probability that the court will ultimately decide that the plaintiff is entitled to the relief which he demands in his complaint, and that the property is in danger of being lost, or materially injured or impaired, before the full investigation and final determination of the case. The judgment demanded by the plaintiff is, that the company be declared to be dissolved. There can, probably, be little doubt that the plaintiff will be able to prove, at the trial, that Rivas,

Hamilton agt. The Accessory Transit Company and others.

the provisional president of the republic of Nicaragua, did, on the 18th day of February, 1856, issue a decree, declaring this company to be thenceforth dissolved. It is not, however, pretended that this decree was in conformity with the previously established organic laws of the land; that it had even the color of legality, or the sanction of any legislative body, or judicial tribunal.

It is conceded to be an act of purely arbitrary power, emanating from the absolute will of the individual, Patricio Rivas. Now, undoubtedly, if this individual, by a successful revolution, whether by fraud, or force, or perjury, stealthily, or by wading through the blood of his fellow-citizens, subverted the institutions of his country, and on their ruins erected the most absolute despotism, disclaiming emphatically, by the bad, bold act itself, the obligations of law and the restrictions of constitutional government, I should be bound, after his government was recognized by our own, to consider all his acts valid: but, as far as I can judge, from the history of the events which attended his elevation, there is strong reason to believe that, although his government was provisional, he was bound by the constitution of 1838, which, like all free constitutions, distributes the different powers of government into executive, legislative and judicial, assigning to each its proper sphere, and, among other salutary provisions, essential to the preservation of political liberty, declaring that the executive power shall never, of itself, annul corporations. The power to do this is, by article 135, sub. 18, declared to be a judicial function; and judicial functions are confined expressly, by article 150, to the judicial department.

The foreign military adventurers, invited by the democratic party, the friends of this constitution, came avowedly, it is positively alleged, to aid them in maintaining that constitution against the legitimists, or aristocratic party, who were desirous of destroying it, and of substituting in its place an aristocratic republic, or a monarchy, absolute or limited. It was on this assurance or pretence, there is some reason to believe, that the people submitted to General Walker, and consented to the es-

Hamilton agt. The Accessory Transit Company and others.

tablishment of a provisional government with Patricio Rivas at its head. And, if this is so, the decree of Rivas, independently of all considerations of its intrinsic injustice, will, in due time, I have little doubt, be regarded by our government as an act of the individual Rivas, and a flagrant spoliation of the rights of American citizens. It will be the province of the American government to insist (the interests of so many of its citizens being concerned) that this decree shall be reconsidered; and, if the company have done anything deserving of death, that they shall have an opportunity of being heard; and, if sentence should be pronounced against them, that it shall be the result of careful investigation, if not according to the course and practice of regular judicial proceeding. Should this be the case, it appears to me probable, from an examination of the documents before me, that this decree will be revoked by Senor Patricio Rivas himself. But, moreover, when I consider the precarious tenure of his power, I am induced to pause before I grant this application.

There is scarcely, in the varied and blood-stained history of mankind, a more sad example than Spanish America affords of the instability of power and the fickleness of the multitude, when once let loose from traditional respect and reverence for law and custom. In that unhappy country, one despot succeeds another with almost as much rapidity as the fleeting images of the magic lantern.

The rule of each successful usurper is notoriously evanescent; what is done to-day will be undone to-morrow; the good accomplished by one will be quickly repudiated by another: perhaps the injustice or tyranny of the despot of this hour will be repaired in the next by his successor; perhaps, among the incessant vicissitudes of political fortune in Nicaragua, Rivas has already vanished from the scene, and his successor is ready to atone for the wrong which the defendants have suffered; or if he sustains himself in spite of, and in opposition to his former friend Gen. Walker, now his enemy, he is inclined to restore the charter of the company, and declare his former decree null and void from the beginning.

Besides, admitting an apparent dissolution, however probable as a historical fact, yet if no material injury is likely to befal the property before the ultimate decision of the case, the court, in the exercise of a sound discretion, ought not to interfere. This consideration seems to be contemplated by § 244 of the Code, relating to provisional remedies before judgment. It provides that a receiver may be appointed when the property is in danger of "being lost, or materially injured, or impaired." The plaintiff makes no allegation to this effect. There is not a particle of proof that the property is "in danger of being lost, or materially injured, or impaired," or of being in the slightest degree injured or impaired.

The plaintiff is the owner of two hundred shares of the capital stock of the company; he is the only owner who applies for this relief, while the owners of 58,857 shares strenuously remonstrate against it, and express their dissent to this application for the appointment of a receiver in this action, "preferring that the affairs of the company shall continue under the present management, unless changed by the votes of a majority of the stockholders."

Indeed, if this application were sanctioned by a considerable number of the shareholders, I would hesitate to grant it at this time, under present circumstances, if opposed by any other considerable number. To grant it may, and, in my opinion, probably would, eventuate in irreparable injury to the company. The appointment of a receiver would disturb and derange its present management, would neutralize all the efforts now made for the restoration of its charter, would defeat the plans which the present direction and the great body of the stockholders have in contemplation; and, if the Rivas decree should be soon revoked, and the company reinstated in its former rights, an insuperable obstacle would stand in the way of re-establishing it in its former state. Thus, by granting the application I may cause an irreparable and extensive injury, while, by refusing it, at the most, the injury would be comparatively trivial.

Application denied, with $10 costs.