[ No. 1383.    Decided March 1, 1895.]

Jennie Brundage *et al.*, *Respondents*, v. The Home
Savings & Loan Association of Minneapolis, Minn.,
*Appellant.*

MORTGAGES — POSSESSION OF MORTGAGEE — APPOINTMENT OF RECEIVER
— AFFIDAVITS — EJECTMENT — ESTOPPEL.

Where a mortgagee has secured possession of the mortgaged
premises without fraud, and there is any indebtedness due under
the terms of the mortgage, the mortgagee cannot be deprived of its
possession by the appointment of a receiver.

The fact that the mortgagee goes into possession of mortgaged
premises under an agreement with the mortgagor which the mort-
gagee failed to sign, but which it recognized and acted under and
placed upon record, makes it a binding and valid agreement on both
parties.

In order to secure the appointment of a receiver, the plaintiff must
clearly establish by the proofs that a receiver is necessary to prevent

fraud, protect the property from injury or preserve it from destruction, mere allegations of such facts being insufficient.

A mortgagee in possession cannot be dispossessed by an action in ejectment, so long as there is any question whether the mortgage debt has been paid in full.

The fact that a mortgagee in possession of premises is committing waste will not authorize the appointment of a receiver in the absence of proof of the mortgagee's insolvency.

Where a party to a contract has acted under it and received benefits from it, he is estopped from denying its existence and force.

Upon an application for the appointment of a receiver, the moving party has no right to read affidavits upon the hearing, which have not been first served upon the adverse party.

*Appeal from Superior Court, Spokane County.*

*Samuel R. Stern*, for appellant.

*John A. Pierce*, and *H. M. Herman*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—The appellant is a corporation, organized and existing under the laws of the State of Minnesota, and was, at all times hereinafter mentioned, doing business in this state at the city of Spokane. The object for which the association was incorporated was, according to its charter, "to assist its members to buy real estate, and build, enlarge or repair houses, paying for the same in weekly or monthly installments, and to accumulate funds from payments on stock subscribed by its members, and to loan such funds to its members on approved real estate security, or the paid up stock of its members." It appears that, under its charter and the laws of Minnesota, it is empowered to loan its funds only to its members. It also appears that on or about July 28, 1892, the respondents made and signed an application for membership in this association, and subscribed for one hundred and sixty shares of its "running," or installment, stock, and

agreed to abide by the terms and conditions of its charter and by-laws. The association thereupon issued and delivered its certificate for said shares of stock to the respondents, who thereby became members of said association. About the time respondents made their application for membership and subscribed for the stock above mentioned, they executed and delivered to the association a written application for a loan of sixteen thousand dollars, which they represented they desired for the purpose of paying off and discharging an encumbrance upon their property, situated upon the northwest corner of Monroe street and College avenue, in the city of Spokane, and erecting thereon a one-story brick building, to cost five thousand dollars. The association advanced the sum of sixteen thousand dollars to the respondents, and also the further sum of $3,200, for the purpose aforesaid, to secure which sums the respondents, on August 19, 1892, executed and delivered to the appellant association two mortgages on the above mentioned property, one for $16,000 and the other for $3,200, both of which were recorded on the following day. Instead of erecting the building mentioned in their application for a loan to the appellant, the respondents entered upon the construction of a building of an entirely different character and of much greater cost, having two stories and a stone basement, not contemplated in the original plan for the building. When the building was partially erected they found they had not sufficient funds to complete it; that it was open and exposed to the elements and was being greatly damaged, and that liens to the extent of about three thousand dollars had been filed against the property. Being so circumstanced, the respondents urged the appellant to advance sufficient money to properly complete the building, and offered to give additional

security for the payment thereof.    After some hesita-
tion, the appellant agreed to advance the further sum
of $7,500, and respondents, to secure this sum, ex-
ecuted a third mortgage covering the property upon
which the other two mortgages were given and other
property known as the Brundage block, on Post street,
and also their homestead in Spokane.    This mortgage,
so far as the Brundage block was concerned, was sub-
ject to a first mortgage held by the defendant bank in
the sum of ten thousand dollars.    To further secure
the sums advanced and owing, the respondents executed
to appellant, simultaneously with this last mentioned
mortgage, an agreement reciting that it was executed
to secure the payment of the mortgages above men-
tioned, and in order to secure this loan, and providing
that the rents and income should be collected and re-
ceived by the defendant association and applied to the
reduction and payment of the mortgages above men-
tioned; to the expense of caring for said property and
collecting and disbursing said rents and paying light
and water rates, and making repairs which the mort-
gagee might deem necessary to have made; to the pay-
ment of any other liens existing against the property
which the appellant might deem advisable to have
paid; and until all such sums were paid, the appellant
was to "take and hold the exclusive possession of all
the property herein mentioned;" to rent any of said
property upon such terms and conditions as seemed
best to appellant; to make leases for such times and
upon such terms as appellant might deem best for its
interests; to care for the said property in such manner
as appellant might deem proper; to employ such
agents as it deemed proper, who were to have full
power and authority, under the direction of appellant
and at the expense of respondents, to do any and all

things in regard to the said property which the appellant might deem proper to do; to apply the moneys received as above stated and to return to the plaintiffs any moneys remaining in its hands after the foregoing application had been made; and at least once in every six months to render a true and itemized statement of all moneys received and disbursed.

This agreement was duly acknowledged and properly recorded in the auditor's office of Spokane county. Before the expiration of the six months within which the appellant was, under the provisions of the contract, to furnish an itemized statement, the respondents instituted this action, praying for the appointment of a receiver, for the restitution and possession of the property, for five thousand dollars damages for the withholding thereof, for $2,750, the value of rents and profits, and for such other and further relief as to the court might seem just and proper.

The complaint alleges, in substance, that on the 31st day of March, 1893, the respondents were the owners in fee and seized and possessed and entitled to the possession of the property described in the complaint; that while so seized and possessed and entitled to the possession of said land and premises, the defendant did, on the day and year aforesaid, without right or title, enter into and upon the same, and oust and eject plaintiffs therefrom, and ever since that day has willfully withheld, and still withholds, the possession thereof, to plaintiffs' damage in the sum of five thousand dollars; that the value of the rents and profits of said land and premises from the 31st day of March, 1893, and while the plaintiffs have been excluded therefrom, is $2,750; that on the 31st day of March, 1893, a pretended agreement was prepared by defendant, whereby it was sought to have the plaintiffs deliver

the possession of the property heretofore described to the defendant; that said defendant falsely and fraudulently represented to the plaintiffs that the said agreement for possession of the property was in part security for the payment of the said sum of $7,500, which the defendant agreed to loan to the plaintiffs for the purpose of completing the construction of a certain brick building in course of erection on part of the said described property, and that the agreement was never sent to the defendant, and never signed by it, and that no part of the $7,500 was ever paid to the plaintiffs; that upon procuring respondents' signatures to the said agreement in the manner aforesaid, the defendant caused the said pretended agreement to be recorded in the office of the auditor of Spokane county without the signatures of any other or others of the parties to said pretended agreement, and that defendant thereupon forcibly, fraudulently, and still falsely representing that said pretended agreement had been fully executed by it, took possession of the said described premises, and still forcibly and fraudulently withholds from the plaintiffs possession of the same; that for a long time after the signing of said agreement by the plaintiffs they knew nothing of the whereabouts of said agreement, nor of the fact that the same had not been signed by the defendant association, and never, since they received knowledge of the non-execution of the said agreement, have the plaintiffs recognized said paper as an agreement, or consented to the possession so wrongfully and fraudulently obtained by the defendant, as aforesaid, of the said described property; that the defendant's management has been reckless and wasteful, and the building on that account has never been completed, to the irreparable injury of the plaintiffs; that because the income has been misappropriated and the

building not completed, no income has been derived therefrom, and the defendant association permitted and caused a foreclosure of the mortgage held by the defendant bank; that the local agent employed by the defendant association was incompetent and imprudent, and wrongfully applied the money paid by defendant to a contract fraudulently entered into with one Dyer for a building different from the one proposed to be erected by said plaintiffs; that the rents and profits received by said defendant was three hundred dollars per month, and that no accounting has been had, and that unless a receiver be appointed, the said property will be wholly lost to plaintiffs.

With this complaint the plaintiffs served a notice, on September 25, 1893, upon the local agent of the defendant, that an application would be made on September 27, 1893, at 10 o'clock A. M., in the equity department of the superior court, before the judge presiding in that department, for the appointment of a receiver.   The complaint and summons were the only papers served upon the defendant.   Defendant appeared at the time indicated in the notice and asked for a continuance for the purpose of procuring affidavits from Minneapolis, where the main office was located, to oppose the application.   A continuance was granted, but, pending a hearing upon the application, a temporary receiver was appointed, who seems to have taken possession of the property in dispute.

On October 17, 1893, the matter came on for hearing before the court, and counsel for plaintiffs proposed to read a number of affidavits in support of some of the allegations of the complaint, which had not been served upon or seen by defendant's attorney. Objection was made by defendant to the reading of the affidavits, on the ground that they had never been

served, and that the defendant had no notice of their contents prior to the time when they were offered in evidence. The court overruled the objection, and permitted the affidavits to be read, granting the defendant an exception.

Objection was also made by defendant that the petition failed to charge or allege insolvency on the part of the defendant association, or that there was nothing due or owing to it, or that plaintiffs had no adequate remedy at law. The defendant was permitted to read affidavits on its behalf, and from those affidavits it appears that certain sums due from plaintiffs to defendant had not been paid, and that the plaintiffs were at that time in default in the sum of about $2,500. Upon the hearing, the court appointed a permanent receiver, over the objection of the defendant, with power to take charge of and collect the rents of the property theretofore in the possession of the defendant.

It is contended by appellant that the court had no right or power to appoint a receiver in this instance, because the facts show that the appellant was a mortgagee rightfully in possession of the premises which the respondents seek to obtain possession of in this action.

At common law, a mortgagee in possession of real property, after condition broken, was deemed the absolute owner, and as such had a right to the possession of the property mortgaged. In fact, the mortgage was itself considered a conveyance of the property mortgaged, subject to being defeated upon payment of the amount due thereon. The mortgagee, even before condition broken, had a right to take possession of the mortgaged premises, and it logically followed, and the courts held, that ejectment would not lie against the

mortgagee in possession. · Under our statute, however, and the statutes of several other states, a mortgage is not considered a conveyance, but is deemed simply a lien, and the mortgagor is the owner of the incumbered premises, and cannot be dispossessed except by foreclosure and sale. But while he has a right to remain in possession of the mortgaged premises until sale thereof, he also has a right to place his mortgagee in possession, and if he does so for a valuable consideration he is bound by the stipulations of his contract. In this case it appears that the appellant took possession of the premises in dispute with the direct assent and knowledge of the respondents, and if it does not appear that such possession was obtained by fraud it cannot be ousted in this proceeding through the medium of a receiver or otherwise.

We think the proof clearly shows that the possession of the appellant was not obtained by fraud, but that the respondents were aware of all of the conditions as well as of the effect of their contract. It also appears from the undisputed evidence filed on behalf of the appellant that the respondents, at the time the receiver was appointed, were indebted to the appellant in the sum of $2,500, as above stated, and there is nothing disclosed by the evidence which warranted the appointment of a receiver in this case to take the possession and control of the premises from the appellant. It seems that the main allegations relied upon as showing that the appellant obtained fraudulent possession of the premises are that the respondents did not recognize the validity and binding effect of the contract for possession after they became aware that it had not been formally signed and executed by the appellant, and that the appellant never advanced the $7,500 specified in the contract. · It would appear from the

allegations in the complaint, as well as from the evidence, that the respondents did recognize and act upon the contract prior to the time they discovered that it had not been signed by the appellant, and we think the fact that it was not signed is not proof of fraud on the part of appellant, nor is it, under the circumstances of the case, in anywise material. The appellant recognized the contract and took possession and control of the premises under it, and placed it upon record. It thus became binding upon the appellant, and it could not thereafter be heard to say that it was not its agreement. It was, therefore, a valid agreement as to both parties. *Muscatine Water Works Co. v. Muscatine Lumber Co.*, 52 N. W. 108; *Dows v. Morse*, 62 Iowa, 231 (17 N. W. 495); *Indianapolis Natural Gas Co. v. Kibby*, 135 Ind. 357 (35 N. E. 392).

And the evidence shows, as matter of fact, that the $7,500 was advanced by appellant in accordance with the terms of the agreement, and expended by it in completing the building and in paying debts theretofore contracted. There having been no fraud practiced by the appellant in obtaining the possession of the premises in question, and it being undisputed that the respondents were indebted to the appellant, and it appearing that the appellant was rightfully in possession, the court had no right to deprive it of its possession by the appointment of a receiver. Beach, Receivers, § 80; High, Receivers, § 419.

Nor do we think the evidence shows that the building was injured or not properly constructed through any fault of the appellant or its agents. Nothing was done by the appellant while in possession that it was not clearly authorized to do by the express terms of the agreement. The action is in substance and effect an action of ejectment to recover the possession of

property rightfully, as we have said, in the possession of the defendant, and the mere allegations of fraud, mismanagement and incompetency, without corroborative proof, do not entitle the respondents to the equitable relief demanded.

Courts will not appoint a receiver except when it is necessary either to prevent fraud, protect property from injury or preserve it from destruction, and mere allegations of these facts are not sufficient to authorize a court to appoint a receiver. The plaintiff must establish such facts and make out a strong case for relief before such appointment will be made. *Baker v. Backus*, 32 Ill. 79; *Hamilton v. Accessory Transit Co.*, 3 Abb. Pr. 255.

It is well settled that a mortgagee in possession, so long as there is any question whether the mortgage debt has been paid in full, cannot be dispossessed by an action in ejectment. Jones, Mortgages, §§ 674, 1093; *Roberts v. Sutherlin*, 4 Or. 220; *Frink v. Le Roy*, 49 Cal. 314; *Moulton v. Leighton*, 33 Fed. 143; *Phyfe v. Riley*, 15 Wend. 248 (30 Am. Dec. 55).

If it were true that the appellant was committing waste upon the premises, that fact alone would not be sufficient to authorize the appointment of the receiver. *State, ex rel. Greenland, v. Second Judicial District Court*, 13 Mont. 416 (34 Pac. 609).

In such a case the plaintiff could maintain an action at law for damages, or defendant might be restrained by injunction. There is no allegation or proof of insolvency on the part of the appellant. On the contrary, the proof shows that it is able to respond in damages for any injury it may cause to the premises, and therefore equitable relief is not necessary.

Again, it appears that the respondents have acted under this contract and received benefits from it, and

they are, therefore, estopped from denying its existence and force.

Objection is also made by the appellant that the respondents had no right to read affidavits upon the hearing of the motion for the appointment of a receiver without first serving them upon the appellant, and, in our opinion, this objection is well taken. It is said in High on Receivers, § 84, that the motion should properly be founded on affidavits or papers, copies of which should be served with notice of the application. And in *Jacobs v. Miller*, 10 Hun, 230, the doctrine is laid down that a moving party has no right to read, on motion, affidavits not served.

The order of the court below is reversed.

HOYT, C. J., and SCOTT, J., concur.