[No. 5254.  Decided December 16, 1904.]

*In the Matter of the Estate of* JOHN SULLIVAN, *Deceased.*
EDWARD CORCORAN *et al., Applicants,* v. W. R. BELL, *Judge, et al., Respondents.*[1]

> 36  217
> f37 696

EXECUTORS AND ADMINISTRATORS—ORDERS DIRECTING THE PAYMENT OF ADMINISTRATOR'S AND ATTORNEY'S FEE—VALIDITY—NOTICE TO DISTRIBUTEES. Orders made in the matter of an estate directing the payment of sums allowed to the administrator and his attorney for fees and services, are void when made without notice or any opportunity to the distributees to be heard, and the administrator will be required to return to the estate any moneys paid out under such ex parte orders.

SAME—ATTORNEY FOR ADMINISTRATOR—RELATION TO THE ESTATE. An attorney employed by an administrator sustains no relation to the estate, and allowances for attorney's fees are not made to the attorney, but to the administrator, as necessary expenditures; hence, where the administrator paid money to an attorney under a void order of the court, the administrator and not the attorney will be required to return it, the adjustment of the attorney's fee being a matter of agreement with the administrator.

[1] Reported in 78 Pac. 945.

CERTIORARI—REVIEW OF ORDERS DIRECTING PAYMENT OF ALLOW-
ANCES TO ADMINISTRATOR—APPEALABLE ORDERS—ADEQUACY OF REM-
EDY BY APPEAL. Certiorari will lie to review ex parte orders made
in the matter of an estate directing the payment of specified sums
to the administrator and his attorney, and future allowances,
where the amount of the supersedeas bond on appeal is indefinite,
and the lower court has refused to fix any amount therefor, and
the fruits of the appeal would be unprotected during the resort to
the appellate court for a supersedeas, since the remedy by appeal
is neither speedy nor adequate, especially where the sums were
paid out of rentals of the real estate, which under the statute
descends directly to the heirs.

EXECUTORS AND ADMINISTRATORS—DISPUTING CLAIM OF HEIR-
SHIP—CERTIORARI—PARTIES IN INTEREST—DESCENT AND DISTRIBU-
TION. Resistance to the claim of heirship does not affect the right
of the alleged heirs to notice and a hearing, where the administra-
tor seeks to pay out funds derived from the real estate, which,
under Laws 1895, p. 197, vests in the heirs immediately upon the
death of the ancestor; hence, upon prosecuting a writ of review
from orders directing such payments, applicants proceeding in an
orderly way to establish their title need not show that their claim
of heirship has been established.

CERTIORARI—DECISION—PROHIBITION. Upon reversing an order
of the superior court, which directed the disbursement of the
funds of the estate, for the reason that the same was without
notice to the heirs and void, a writ of prohibition will not be is-
sued to enjoin the lower court from making further orders with-
out due notice.

Certiorari to review ex parte orders of the superior
court for King county, Bell, J., entered July 1, 1904,
directing the payment of certain allowances to an admin-
istrator for services and attorneys' fees. Reversed.

*Piles, Donworth & Howe* and *C. H. Farrell,* for appli-
cants.

*James J. McCafferty* and *J. W. Robinson,* for respond-
ents. The writ should not issue because the applicants have
a plain, speedy, and adequate remedy by appeal. *Greg-
ory v. Dixon,* 7 Wash. 27, 34 Pac. 212; *State ex rel. Reser
v. Superior Court,* 13 Wash. 25, 42 Pac. 630; *State ex*

*rel. Grady v. Lockhart,* 18 Wash. 531, 52 Pac. 315; *State ex rel. Townsend Gas etc. Co. v. Superior Court,* 20 Wash. 502, 65 Pac. 933; *Browne v. Gear,* 21 Wash. 147, 57 Pac. 359; *State ex rel. Lewis v. Hogg,* 22 Wash. 646, 62 Pac. 143; *State ex rel. Cann v. Moore,* 23 Wash. 276, 62 Pac. 769; *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385; *State ex rel. Foster v. Superior Court,* 30 Wash. 156, 70 Pac. 230, 73 Pac. 690.

HADLEY, J.—This is an application for a writ of review, directed to the superior court of King county, and to the Honorable W. R. Bell, one of the judges thereof. It is asked that certain orders directing payment of money from the estate of John Sullivan, deceased, shall be reviewed and quashed. The application further asks that the administrator of said estate and his attorney shall be required forthwith respectively to pay back to said estate the sums of money paid to them under the terms of the orders sought to be reviewed. The affidavit filed in support of the application avers that Edward Corcoran, Samuel H. Piles, and Charles H. Farrell as administrator of the estate of Hannah O'Callaghan, deceased, are the parties beneficially interested in the application, for the following reasons, to wit: That said John Sullivan died in the city of Seattle, on the 26th day of September, 1900; that said Hannah O'Callaghan is one of the heirs and next of kin of said Sullivan, and that she died in the city of Cork, Ireland, on or about the 21st day of May, 1904; that said Charles H. Farrell is her duly appointed and qualified administrator; that at the time of her death said Hannah O'Callaghan was the owner of an undivided one-fourth of the estate of said Sullivan; that said Edward Corcoran is also one of the heirs and next of kin of said Sullivan; that said Samuel H. Piles is a grantee

of said O'Callaghan and Corcoran of an undivided half interest in the said Sullivan estate. It is further averred that, on the 1st day of July, 1904, the Hon. W. R. Bell, as judge aforesaid, without notice to any one and without having acquired any jurisdiction in the premises, made an order directing Terence O'Brien, as administrator of said Sullivan estate, to appropriate out of any moneys or effects of the estate in his hands, as compensation in full for his services as administrator from the 20th day of December, 1902, to the 20th day of June, 1904, the sum of $6,300, and that said administrator also pay to himself thereafter the sum of $350 per month out of any moneys in his hands belonging to said estate, until the further order of the court. It is alleged that, up to and including January 2, 1903, said administrator had been allowed and paid, on account of his commissions as administrator, sums aggregating $20,074.16, and that the above mentioned order, directing him to pay himself $6,300, and also $350 per month thereafter, is for amounts in addition to said $20,074.16; that said estate was appraised at $447,000, and that, outside of a mortgage debt of $60,000, the indebtedness of Sullivan at the time of his death did not exceed $1,000. It is further alleged that, at the same time said court made the above mentioned order for the administrator to pay himself said $6,300, it also ordered the administrator to pay to James J. McCafferty, as his attorney, the sum of $1,700 out of funds of the estate in the hands of the administrator; that by said order the court also fixed the compensation of said McCafferty from the 16th day of February, 1903, to the 16th day of February, 1904, at the sum of $2,400, and credited upon said amount the sum of $1,500 theretofore ordered paid, and which was then and is now involved in an appeal pending in this court; that after

crediting said $1,500, there remained $900 of the amount allowed as above for said one year period; that said order also fixed the compensation of said McCafferty from February 16, 1904, to June 16, of the same year, at $800, and directed it to be paid, together with said $900, making $1,700 as aforesaid; that in said order the court also directed the administrator to pay any necessary expenses, connected with the appeal, from the $1,500 order above mentioned; that the order was made without notice to any one, and these applicants had no knowledge thereof until the 13th day of July, 1904. It is alleged that the order for the payment of $1,500, as attorney's fees, hereinbefore mentioned as on appeal to this court, was also made without notice, and that, if these repeated allowances without notice to any one continue to be made, the estate will be finally plunged into debt, so that it will be unable, from its income, to meet the expenses of interest on said $60,000 mortgage, and of taxes and ordinary repairs. It is also made to appear by the affidavit that, prior to the allowance of attorney's fees to said McCafferty, the firm of Pratt & Riddle was paid the sum of $10,000 from said estate, on account of fees as attorneys for said administrator. It is further shown that the final settlement of the estate is postponed, on account of pending litigation between the persons claiming the estate as heirs and next of kin of said Sullivan on one side, and one Marie Carrau on the other, the latter claiming the entire estate under an alleged nuncupative will.

Upon presentation of the affidavit reciting the above facts, together with others which we think it is unnecessary to repeat now, an order was by this court directed to respondents, requiring them to show cause upon July 29, 1904, why a writ of review should not be granted

for the purpose of effecting a review of the orders above mentioned. At the hearing the respondents argued a motion to discharge the order to show cause and a demurrer to the application as being insufficient. It is the position of the applicants that the orders are void, as having been made without jurisdiction, for the reason that they were made entirely *ex parte* and without notice of any kind to persons interested as distributees of the estate. The principle involved seems to be so fundamental that citation of authorities is unnecessary. Indeed, the principle is not controverted by the respondents, but they assert that the orders are merely interlocutory, and are neither conclusive nor binding against the right of the distributees to be heard upon final settlement of the estate. The orders are, however, entered in the form of solemn judgments of the court. They show that testimony was heard; that the court made findings that the amounts were reasonable, and unqualifiedly commanded their payment. They bear no evidence that they were entered as mere interlocutory orders, subject to future review by the court upon a full hearing when all parties should be before it.

"Interlocutory (in law) means that which does not decide the cause, but settles some intervening matter relating to the cause." 16 Am. & Eng. Law (2d ed.), 1117.

These orders purport to be decisive of the matters involved, and leave nothing to be done hereafter in relation to the subject matter. The argument of respondents being to the effect that the orders are of no binding force, for the reason that they may be reviewed at the hearing upon final settlement of the estate, then why should they be entered as the deliberate judgments of the court based upon testimony and findings as to facts?

In form they at least have the appearance of having been intended to be final and conclusive as to all concerned.

Respondents say that our statutes provide for no notice whereby persons interested in an estate may be brought into court for the hearing of matters of this kind, except the notice of final settlement. If that be true, then it is manifest the court cannot acquire jurisdiction to determine them until after such notice has been given, unless all interested parties appear in response to some other kind of notice, and voluntarily submit to the jurisdiction of the court. The effectiveness of any other kind of notice, served during the course of administration, is not now before us for determination. But, in the absence of any notice or of voluntary appearance, the orders in question must, under respondents' own theory, be without force and therefore void. If an administrator shall pay money to himself for his own services pending the course of administration, without due hearing upon notice, he must do so at his peril, for the court can enter no orders or judgment that will protect him until the interested parties are before it, or until they have been properly notified. If the court assumes to act in an *ex parte* manner, it can amount to no more than a mere advisory act, and the administrator who pays money to himself in pursuance thereof must do so knowing that the matter cannot be finally and judicially determined until all interested persons are before the court, or until they have been duly notified. The same principle applies to payments made to the administrator's attorney. The allowance for attorney's fees is not made to the attorney, but to the administrator, as a necessary expenditure incidental to his settlement of the estate. There is no relation between the administrator's attorney and the estate, and he can assert no

claim against the estate for his services, but the administrator is himself liable in a suit by the attorney. Woerner on Amer. Law of Admr. (2d ed.), § 356; *Austin v. Munro,* 47 N. Y. 360; *Tucker v. Grace,* 61 Ark. 410, 33 S. W. 530; *Thomas v. Moore,* 52 Ohio St. 200, 39 N. E. 803; *Henry v. Superior Court,* 93 Cal. 569, 29 Pac. 230; *Barker v. Kunkel,* 10 Ill. App. 407. It follows that money paid by an administrator to his attorney from funds of the estate must also be paid at the peril of the administrator, until the court has duly adjudicated the administrator's claim for its allowance after all interested parties have had an opportunity to be heard.

Respondents contend that the orders in question cannot be reviewed under the writ of review, for the reason that the applicants have a remedy by appeal. The applicants admit that they have the remedy of appeal, but they urge that it is inadequate to preserve the fruits of the appeal. It will be remembered that one of the orders, in addition to directing the administrator to pay himself, outright, the sum of $6,300, also authorizes him to pay to himself the sum of $350 each month thereafter. It is therefore manifest that, pending an appeal, other sums aggregating a large amount would be paid out. It would be impracticable to estimate and fix, as upon a judgment for the recovery of money, the necessary amount for a supersedeas bond to cover the monthly sums for the uncertain time to elapse pending an appeal. The other order involved in this application, in addition to providing for the payment of $1,700 outright as attorney's fees, also directs the payment of the expenses of an appeal from a similar order for $1,500 theretofore ordered, and which has been hereinbefore mentioned. The appellants in that appeal, being the applicants here,

are prosecuting it for the purpose of saving that money to the estate, and it is difficult to understand upon what theory the administrator is interested in paying out funds of the estate to defeat that appeal. In any event, however, the order directs the payment of an indefinite amount for that purpose. The same difficulty therefore exists as to a supersedeas bond in the event of an appeal as in the case of the other order. Moreover, it is made to appear in the application that the same court has heretofore refused to fix an amount for a supersedeas bond in the appeal from the said $1,500 order; and also declined to recognize as a supersedeas a bond in ample amount which was filed. The orders here involve the same principle as the other, and, since it is the theory of the court that such orders may not be superseded, it appears that an appeal will not be adequate to preserve the fruits thereof. In any event, it would seem that, to effect a stay of proceedings, resort to the appellate court would first be necessary, in order to determine if a supersedeas bond should be recognized by the lower court, and meantime the fruits of the appeal would be unprotected. Therefore, under all the circumstances, we believe the applicants are entitled to adopt the more direct method, and have the matter examined under the writ of review, as the only speedy and adequate remedy. In *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385, this court said:

"This court has held in a long line of recent cases that the extraordinary writs of certiorari, prohibition, and mandamus will not issue to correct the action of the superior court when the court is acting erroneously, either with or without jurisdiction, but always with the provision that there is an adequate remedy by appeal. This adequate remedy has not been construed to be as speedy a remedy as the remedy by extraordinary writ

might be, but a remedy which preserves the fruits of
the appeal when won. In other words, the *status quo* of
the parties litigant must be preserved, and, if by await-
ing the result of an appeal the fruits of the litigation
would be lost, the remedy has not been considered an
adequate remedy."

It is true the court in that case was dealing with the
question of the right of a street railway company to erect
a trestle in a street, which might have the effect to dam-
age the property of an abutting owner, and it was held
that he was entitled to have the damage ascertained be-
fore the structure was built, in order that his property
might not be taken or damaged without due process of
law. A bond for the protection of the property owner
had been recognized by the lower court, but this court
said:

"The protection to the owner of the property is not
the protection guaranteed by a bond upon which suit
would have to be instituted, and the party subjected to
all the delays and dangers incident to a law suit, with
the possibility of bondsmen becoming insolvent, nor any
other compensation that is coupled with doubtful results,
vexations, or delays."

The principle there discussed is analogous to the one
involved here. The funds of this estate are the property
of the distributees, consisting as they do of the rentals of
real estate, and they are entitled to be protected therein
as they would be in the real estate itself. In *In re Kru-
ger's Estate,* 123 Cal. 391, 55 Pac. 1056, the supreme
court of California said:

"An order for the payment of money, by which the
property of the heirs, legatees and devisees is to be taken
from them, cannot be made without notice and an oppor-
tunity to them to be heard. It cannot require the cita-
tion of authority in support of the proposition that one

may not be thus deprived of his property without process of law."

It is also contended that the applicants have no standing here, for the reason that it has not been established that they are heirs of the estate. The application, however, states that they are such, and, also, that litigation is pending between them and one Marie Carrau, who claims the entire estate as aforesaid. It therefore appears that the applicants not only claim to be the heirs, but that they are proceeding in an orderly manner to establish their title to the funds of the estate. As orderly claimants of the estate, it cannot be the law that, pending the resistance to their claim, they have no right to be heard as to the disposition that shall be made of the funds by the custodian thereof. In that event, it would be possible for the entire estate to be dissipated before their rights could be finally adjudicated. Under the statute of 1895, session laws of that year, page 197, the title to lands, or any interest therein, vests immediately in the heirs. See, also, *Griffin v. Warburton*, 23 Wash. 231, 62 Pac. 765; *Anrud v. Scandinavian-American Bank*, 27 Wash. 16, 67 Pac. 364. Since the title vests in the heir at the time of the decedent's death, he is entitled thenceforth to be heard as to the disposition of the estate, and the mere fact that a resistance to his claim of heirship may exist does not deprive him of such right. The administrator who seeks to pay out the funds of the estate, for his own and counsel's services, must recognize the right to be heard on the part of all claimants, as heirs or devisees, who proceeded in a regular way until conflicting claims have been finally adjudicated. It follows from the foregoing that the respondents' demurrer to the application for a writ of review, and their motion to be discharged thereon, must be overruled.

The answers and affidavits of the respondents, we think, present no sufficient additional reasons why the orders discussed shall not now be reviewed. Therefore, inasmuch as the orders are void, they should be quashed, and it is now ordered that they be .quashed of record. It follows from what has been said that the administrator must return to the funds of the estate any moneys he may have paid out under claim of authority from said orders. This not only includes money paid to himself, but also any paid to his attorney. The applicants ask that Mr. McCafferty, as the administrator's counsel, be by this court directed to return to the estate any money received by him from the administrator, under claim of authority from said orders; but, as we have hereinbefore seen, the attorney sustains no relation to the estate, and is not a party thereto. The administrator is the party before the court who must account for the funds of the estate. The adjustment of the amount of attorney's fees that shall be paid is a matter of agreement between him and his attorney. But, if paid from funds of the estate, he must know that he cannot be protected in its disbursement until the court has ordered it paid, after a hearing with interested parties before the court, either by notice or otherwise. We therefore decline to make any order directed to Mr. McCafferty, but leave him and the administrator to adjust their own affairs. It is, however, now ordered that Mr. O'Brien, the. administrator, shall return to the funds of the estate all moneys paid out by him under said so-called orders.

The applicants also ask that a writ of prohibition shall issue enjoining the lower court from making further orders for the disbursement of the funds of said estate without .due notice. We shall not assume that a superior judge will make such orders without notice or without the

parties being voluntarily before him, in the face of what
has been said in this opinion. The application for pro-
hibition is therefore denied, but the review is granted,
and the matters reviewed as hereinbefore stated. The
lower court is directed to proceed in accordance with this
opinion.

FULLERTON, C. J., and MOUNT, DUNBAR, and ANDERS,
JJ., concur.