[No. 15750.   Department Two.   March 30, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Silver Basin Mining Company et al., Plaintiff*, v. THE SUPERIOR COURT FOR STEVENS COUNTY, *D. H. Carey, Judge, Respondent.*[1]

CERTIORARI (6)—WHEN LIES—ADEQUACY OF REMEDY BY APPEAL—ORDER DIRECTING RECEIVER'S SALE. Certiorari lies to review an order directing a receiver to sell assets of a corporation at private sale, where the remedy by appeal is inadequate because the supersedeas bond could not be fixed before the sale, and there was no protection from waste by the purchaser.

APPEAL (228)—EFFECT OF TRANSFER—RECEIVER'S SALE. The court cannot direct a receiver to sell property after all the parties had consented to his discharge and to a dismissal of the action, and the court had fixed his fees by an order from which an appeal had been taken and supersedeas given.

Application filed in the supreme court January 30, 1920, for a writ of certiorari to review an order of the superior court for Stevens county, Carey, J., entered January 26, 1920.   Granted.

*Freece & Pettijohn*, for relators.
*Zent & Jesseph*, for respondent.

TOLMAN, J.—This is an original application for a writ of review. The facts as shown by the record before us are substantially as follows: On May 29, 1919, James Holland, as plaintiff, commenced an action in the superior court for Stevens county, Washington, seeking the appointment of a receiver for the Silver Basin Mining Company, a corporation. On the same day, the corporation filed its answer in the cause, admitting the material allegations of the complaint and consenting to the appointment of a receiver. Thereupon the superior court made an order appointing

[1]Reported in 188 Pac. 384.

M. E. Jesseph temporary receiver, and directed the giving of notice to the mining company and certain of the principal stockholders and creditors of the mining company that the matter of the appointment of a permanent receiver would be heard on June 16, 1919. Such notice having been given, and the matter coming on for hearing in accordance therewith, and the parties then appearing having been heard, the court found that the corporation was insolvent; was unable to pay its debts in the ordinary course of business; was wholly without funds or credit; that the officers of the corporation were quarreling among themselves and unable to agree as to the management of the corporation, and that there was danger that great loss would be occasioned by such facts, and thereupon the appointment of the receiver was made permanent. The receiver duly qualified and entered upon the discharge of his duties.

Thereafter, in July, the receiver reported to the court a bid for the mining property owned by the corporation in the sum of $60,000, upon time and terms, but because no order of sale had theretofore been petitioned for or made, the court declined to accept or consider the bid or then order a sale of the property, and directed the receiver to petition the court for leave to sell. Thereafter the receiver filed a proper petition for an order of sale of the mining property and, after due notice, a hearing was had thereon, and the court directed the receiver to sell the property of the corporation at private sale for cash or upon credit, after publication of three weeks' notice. Notice was given as directed, and thereafter C. S. Turner, one of the principal creditors and stockholders of the mining company who was the holder of a judgment against it for a considerable amount, filed a bid with the receiver, offering to purchase the property of the cor-

poration for the sum of $18,000, and conditioned that his judgment against the corporation should be accepted as cash, and offered to pay the balance of the purchase price over and above the amount of his judgment as ordered by the court. This bid was, by the receiver, reported to the court with a recommendation that it be not accepted. Other interested parties also objected to its acceptance, and upon a hearing had on November 1, 1919, the court rejected such bid and ordered the receiver to readvertise for bids for the property. This the receiver did, and on December 9, 1919, received two bids for all of the property of the corporation, one from C. S. Turner, the former bidder, for the sum of $100,000, payable upon terms, and one from C. E. Mallette and T. J. Vaughan Rhys, for the sum of $25,500. The receiver accepted the Turner bid and reported both bids to the court, asking for confirmation of his sale of the property to Turner.

Thereafter and before a hearing upon the receiver's report of sale, the parties to the litigation, other than the receiver, made an adjustment and settlement of their differences and the differences between the corporation and its creditors and filed a motion for the dismissal of the action and the discharge of the receiver. Consent to such dismissal was given by all of the contesting creditors of the corporation and its principal stockholders and officers. Upon being advised of this settlement, the receiver filed his final report in said cause, setting forth in detail his acts and proceedings as receiver, etc., and asking the court to fix his compensation and that of his attorneys and make an allowance for his and their expenses. The hearing upon the report of the receiver, for the confirmation of the sale to Turner at the price of $100,000, the hearing of the petition and motion to dismiss the action, discharge the receiver, and the hearing upon

the final report of the receiver, were had on the 2d day of January, 1920, all parties being present in person or by attorney. The court heard evidence with relation to the petition and motion to dismiss the action, and with reference to the receiver's claim for fees, attorneys' fees and expenses, and thereupon fixed the compensation of the receiver at the sum of $2,500, and the compensation of his attorneys at the sum of $2,500, and their expenses were allowed, amounting to $365, and ordered that,

"Upon the payment of said sums of money to the clerk of the above entitled court, or to said receiver or his attorneys, as fixed and allowed by said order heretofore mentioned, that then and in that event this court will make a formal order herein discharging said receivership and dismissing this action, and turning back to said defendant corporation the property now in the custody of the court; until such time, however, said receivership shall continue in full force and effect."

Thereafter, on January 10, 1920, the court made an order continuing the hearing upon the report and confirmation of sale of the property on the Turner bid, to January 17, 1920, and this hearing was again continued to January 26, 1920. Thereafter and before January 26, the Silver Basin Mining Company and James Holland (plaintiffs in this action) gave notice of appeal from the orders fixing the fees and allowances to the receiver and his attorneys, refusing to discharge the receiver, and continuing the hearing on the return of sale, and on January 26 filed such notice of appeal, together with an appeal bond in the sum of $200, and a supersedeas bond in the sum of $11,000 in the court and cause, and following such filing, the parties so appealing appeared by their attorneys and objected to further proceedings in the matter of the said receivership, and objected to the making of any

order confirming or directing the sale of the property. The court, however, on the day last mentioned, entered its order refusing to confirm the sale of the property to Turner on his bid of $100,000, and by its order directed the sale of all of the mining property to C. E. Mallette and T. J. Vaughan Rhys on the bid theretofore made by them, and rejected by the receiver, for $25,500, payable $500 in cash, and the balance in instalments, and directed the receiver to enter into contracts with Mallette and Vaughan Rhys evidencing the terms of the sale. The superior court before whom the proceedings were had, in its answer here, sets up that the allowances made to the receiver and his attorneys are reasonable and just, and in nowise excessive, and should be paid; that the plaintiffs in this action and their attorneys have never, since the allowance of the said fees, made any payment thereof, or in any form presented the matter to the court for consideration since the order was made, and further sets out that it appeared to the court that the bid of Turner for $100,000 was not made in good faith, but was in fact a "puffing" bid and made for the purpose of preventing other bidders from acquiring the property, and for the further purpose of securing the discharge of the receiver without the fixing of his compensation or the payment of the same, and that the Turner bid was rejected for these reasons, while the Mallette and Vaughan Rhys bid was found to have been made in good faith, and was accepted for that reason. The plaintiffs in their application for the writ further allege:

"That said receiver is about to carry out the order of said court and sell said property to said Mallette and Vaughan Rhys for $25,500, and will do so at once unless the writ herein requested is issued. That before notice of hearing on this application can be given, said con-

tracts will have been made. That if said sale is made, the stockholders of said mining company will be deprived of their property and their stock made valueless, and said creditors will in all probability suffer loss of a part of their claims. That no necessity whatever now exists for the sale of said mining property by said receiver, as the only claim requiring payment is that of the receiver, which has been appealed from and superseded, and said court is wholly without authority or purpose for making said sale. That said receiver is not financially able to respond in damages to said plaintiffs herein, and his bond of $10,000 is wholly insufficient therefor. That said mining property has much valuable ore within reach available for early shipment, and should said buyers obtain possession of said property they will at once commence operations in said mine and take many thousands of dollars of valuable ore therefrom, and there is no way to compensate plaintiffs for such losses. That said operations will in all likelihood be carried on for the purpose of putting said mine in shape for quick re-sale to other parties for its real value and will not be developed · for permanent advantage to said mine. That said mining company will be deprived of the right to conduct operations of its own property in its own way and for its best interests, all to its irreparable loss and damage. That no bond has been exacted by said court from said buyers to protect said mining company and its creditors against these losses, and these plaintiffs will have suffered great and irreparable loss and damage before an appeal from said order of sale and confirmation of sale can be finally determined. That said Hon. D. H. Carey, Judge, is absent from Stevens county holding court elsewhere, and there is no judge of said court who can fix a supersedeas bond on appeal from said orders of sale and confirmation, and before said matters can be superseded, said contracts of sale will have been executed."

The first question raised is that the order sought to be reviewed is appealable, and therefore this action will not lie. The order is no doubt appealable, but is

the remedy by appeal plain, speedy and adequate? Under the allegations quoted above, which are in part, at least, undenied, and may be wholly true, it would seem that the remedy by appeal is inadequate, and when such remedy is inadequate we have always recognized the right to an extraordinary writ. *In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945; *State ex rel. Speckart v. Superior Court,* 48 Wash. 141, 92 Pac. 942; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *State ex rel. Griffith v. Superior Court,* 96 Wash. 41, 164 Pac. 516; and *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F 905.

On the merits, it seems equally plain that when the plaintiffs in the original cause moved for its dismissal and all the parties interested consented thereto, there remained nothing for the court to do but settle the receiver's accounts, fix his fees and allowances, and direct the payment thereof, and after such payment was made, discharge the receiver and dismiss the action. The right of appeal from the order fixing the fees and allowances having been exercised, and an appeal and supersedeas bond given, did not change the situation except that the court and the parties could proceed no further to enforce the payment, and thereby the duty was placed upon the court to hold the situation in *status quo* pending such appeal. *State ex rel. McDonald v. Superior Court,* 6 Wash. 112, 32 Pac. 1072; *Brundage v. Home Savings & Loan Ass'n,* 11 Wash. 277, 39 Pac. 666; *State ex rel. Schwabacher Bros. & Co. v. Superior Court,* 13 Wash. 638, 43 Pac. 877.

The supersedeas bond was in more than double the amount of the allowances made to the receiver and his attorneys; was conditioned as required by statute,

"That the appellant will satisfy and perform the judgment or order appealed from in case it shall be

affirmed, and any judgment or order which the supreme court may render or make, or order to be rendered or made by the superior court."

Clearly the receiver was fully protected by this bond and, upon its being filed, the court should have proceeded no further, except as might be necessary to preserve the *status quo* pending the appeal.

The other points raised and discussed by plaintiffs have not been considered or decided. They may be presented when the pending appeal is heard, without prejudice.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MOUNT, JJ., concur.